UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| SLATTERY CO. INC. | CIVIL ACTION NO. 11-cv-1399 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CHESAPEAKE LOUISIANA LP | MAGISTRATE JUDGE MARK HORNSBY |

**MEMORANDUM RULING**

The Plaintiff, Slattery Company, Inc. ("Slattery"), filed suit against Defendant Chesapeake Louisiana LP ("Chesapeake"), asserting that Chesapeake failed to timely pay royalties on two wells and that Chesapeake has improperly withheld post-production charges from Slattery's royalty payments. Currently before the Court is Slattery's motion for partial summary judgment, which seeks a ruling from the Court that it is entitled to double damages, attorney's fees, and interest due to Chesapeake's failure to timely pay royalties. [Record Document 41]. Chesapeake opposes Slattery's motion for partial summary judgment. [Record Document 46]. After a thorough review of the record, the Court concludes that there are genuine issues of material fact which preclude the grant of summary judgment. Accordingly, Slattery's motion for partial summary judgment [Record Document 41] shall be DENIED.

## **FACTUAL BACKGROUND**

The facts of this dispute are fairly straightforward. Among others, Slattery owns the land and mineral rights to acreage in Sections 14 and 23, Township 16 North, Range 14 West, in Caddo Parish, Louisiana. Chesapeake is the mineral lessee on Sections 14 and 23. The wells at issue here are the HA RA SUQ; SLATTERY 14-16-14 H well (the "Slattery well") and the HA RA SU116; THOMPSON 23-16-14H well (the "Thompson well"). The Slattery well was completed on approximately January 22, 2011, while the Thompson well was completed on approximately February 8, 2011. By April, Chesapeake had not yet paid Slattery any royalties from the production on these wells, although there had been email communications between the parties regarding when Chesapeake expected to pay royalties. In fact, on April 1, 2011, Ben Russ, Chesapeake's Division Counsel for the Southern Division, notified Slattery (via its attorney Bernard Johnson) that the first royalty distribution for the Slattery well would be in May and the first royalty distribution for the Thompson well would be in June, 120 days after production, respectively. See Record Document 45-1, p. 11.

By letter dated April 13, 2011, Slattery officially notified Chesapeake in writing of its demand for royalty payments:

> On behalf of the Slattery Company, Inc., this letter will serve as formal demand for you to pay them any and all royalties due from this well [the Slattery and Thompson wells] within thirty (30) days of the date of this letter, or my client has instructed me to seek all remedies allowed under the Louisiana Mineral Code under La. R.S. 31:137 et seq. including but not being limited to, double the amount of royalties due, interest, attorney fees and dissolution of the lease.

Record Document 41-3, p. 10. Chesapeake received the letter on April 15, 2011 and responded in writing on May 13, 2011, stating in pertinent part:

> As noted in your letter, first sales for the Slattery 14 occurred in January 2011 and first sales for the Thompson 23 occurred in February 2011. We are setting up your royalty interest in our system and the Slattery Company will receive division orders soon. Regardless, royalty distributions for the Slattery 14 will begin in May and distributions for the Thompson 23 will begin in June.

Record Document 41-3, p. 13. However, instead of paying in May and June, respectively, as Chesapeake represented it would do, Chesapeake did not actually pay royalties on the Slattery well until June 29, 2011, while royalties on the Thompson well were not paid until September 29, 2011. Based on this delay in payment and Chesapeake's alleged lack of a reasonable cause for nonpayment, Slattery submits that it is entitled to partial summary judgment awarding it double damages, attorney's fees, and interest on the royalty payments.

## LAW AND ANALYSIS

I.   Motion for Summary Judgment.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct.

2505, 2510 (1986). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id.

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. See Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005). However, a factual controversy only exists when "both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

II.    Slattery's Motion for Partial Summary Judgment.

As previously mentioned, Slattery's motion for partial summary judgment seeks double damages, attorney's fees, and interest on the unpaid royalties from the Slattery and Thompson wells, alleging that these damages are appropriate under the Louisiana Mineral Code. Pursuant to the Louisiana Mineral Code, when a mineral lessor is seeking damages due to the lessee's nonpayment of royalties, Louisiana Revised Statute 31:137 requires the lessor to give the lessee written notice of his demand for performance before seeking court intervention. La. R.S. 31:138 then gives the lessee thirty days to either (1) pay the royalties due or (2) respond to the lessor in writing, providing a reasonable cause for nonpayment. However, "[t]he Mineral Code provisions do not define what constitutes a reasonable response . . . ." Chevron USA, Inc. v. Vermilion Parish Sch. Bd., 377 F.3d 459, 463 (5th Cir. 2004).

If the lessee pays the royalties in response to the lessor's demand, La. R.S. 31:139 precludes dissolution of the lease as a remedy, except in the case of fraud; however if the failure to pay the royalties was fraudulent or willful and without reasonable grounds, the court may award double damages, interest, and attorney's fees. If the lessee pays the royalties but the initial nonpayment is deemed to be the result of oversight or neglect, damages are limited to interest on the royalties from the due date and attorney's fees. If, however, the lessee does not pay the royalties due within thirty days of demand or does not provide a reasonable explanation for nonpayment, La. R.S. 31:140 allows the court to award double damages, interest, attorney's fees, and possibly lease dissolution. Louisiana state courts have interpreted La. R.S. 31:140 to mean that if the lessee gives a reasonable explanation for nonpayment within thirty days, then the only remedy available to the lessor is interest on the amount of the royalties owed. See Arceneaux v. Hawkins, 376 So. 2d 362, 366 (La. App. 3 Cir. 1979). In the instant case, it is undisputed that Chesapeake did not pay the royalties within thirty days of Slattery's demand letter; thus, La. R.S. 31:139 (where payment is made within thirty days) is inapplicable and only the damages permitted by La. R.S. 31:140 are at issue here.

The Court notes at the outset that the determination of what constitutes "reasonable cause" is primarily a fact question. See Arceneaux, 376 So. 2d at 366 (court may determine "*as a matter of fact*, whether the cause of delay . . . is a reasonable cause")(emphasis added); Oracle 1031 Exch., LLC v. Bourque, 2011-1133 (La. App. 3 Cir. 2/8/12), 85 So. 3d 736, 741

(district court's determination that lessee's actions in delaying payment "were either fraudulent or willful and without reasonable grounds" was a finding of fact); Hilliard v. Amoco Prod. Co., 95-1366 (La. App. 3 Cir. 10/9/96); 688 So. 2d 1176, 1178 (to determine whether withholding of royalty payments was unjustified, willful, and without reasonable cause, trial court had to "weigh all the factual findings and credibility of witnesses").[1] The Court finds that this case similarly presents fact questions which cannot be resolved on summary judgment.

A necessary precondition to the award of damages is a finding that the mineral royalties were actually "due." Although this proposition, in theory, seems self-evident and rather simplistic, the law is unclear as to when royalties become due. Quoting Hilliard, Slattery argues that "royalties to the land owners are due from the time the product is produced." While the Court agrees that the Hilliard case does make this assertion, there is no jurisprudential support for that statement, nor can the Court locate any on its own. Chesapeake, on the other hand, points out that La. R.S. 31:123 instructs that a lessee "is obligated to make timely payment of rent according to the terms of the contract or the custom of the mining industry in question if the contract is silent." Because the contract

---

[1] The Court's research located only two cases wherein the issue of reasonable cause was disposed of at the summary judgment phase: Adams v. BP America Production Co., 2012 WL 1038035 (W.D. La. Mar. 27, 2012) and Bickham v. Amoco Production Co., 1993 WL 302677 (E.D. La. Aug. 5, 1993). Both of those cases are readily distinguishable from the facts of the instant case.

between Slattery and Chesapeake was silent on this point, Chesapeake submits that royalties are due according to industry custom, which is a fact question whose resolution is improper on summary judgment.[2] The Court finds that there is a genuine issue of material fact as to whether royalties were, in fact, due at the time when Slattery issued its demand.[3]

In addition, the Court finds that there is a genuine issue of material fact as to whether Chesapeake's response stated a "reasonable cause" for its nonpayment. Taken in isolation, Chesapeake's letter could be construed as a response only, without any sort of reason or explanation given whatsoever. However, given the email exchanges between the parties prior to the demand letter and the response, it may be determined that all of these communications, taken together, provided a reasonable cause for the 120 day delay in

---

[2] The Court does not find that the declaration of Jonathan Ellis, Chesapeake's consultant as to industry custom, is competent summary judgment evidence. Ellis's resume is not attached, as indicated. More troubling, however, is that Ellis offers an opinion on the ultimate issue- whether the 120 day delay in payment was in line with industry custom- without providing any explanation as to how he arrived at this conclusion, the materials on which he relied in reaching same, or his methodology. As noted by Slattery, his opinion is entirely conclusory. Accordingly, Ellis's declaration is insufficient to defeat summary judgment and has not been considered by the Court.

[3] Although Slattery asserts that Chesapeake's reliance on industry custom as a defense to nonpayment is an affirmative defense which has been waived, the Court disagrees. Rather, it is the plaintiff's burden to establish that royalties were due when the demand was issued, thus the plaintiff bears the burden of proof on this element.

payment.[4] It is also a fact question whether Chesapeake's reason for nonpayment stemmed from the need for a division order, as implied by its response letter, yet denied in its opposition to Slattery's motion for partial summary judgment.

## CONCLUSION

Based on the foregoing, the Court finds there are genuine issues of material fact, which preclude the grant of summary judgment. Accordingly, Slattery's motion for partial summary judgment [Record Document 41] be and is hereby **DENIED**.

THUS DONE AND SIGNED on this 19th day of March, 2013.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[4] It may also be found that the series of emails between the parties constituted an ongoing narrative which would be informative in the determination of when the royalties were due.